Walter H. Wilson v. Henry B. Mason and James L. Houghteling.

1. Real Estate Agent—*When Not Entitled to Commissions.*—A real estate agent, who fails to perform the condition upon which his commission depends, can not recover.

Memorandum.—Assumpsit for commissions. Appeal from the Superior Court of Cook County; the Hon. George F. Blanke, Judge, presiding. Submitted at the October term, 1894. Affirmed. Opinion filed January 10, 1895.

## Statement of the Case.

In the month of September, 1893, the plaintiff below, Walter H. Wilson, was and had been for seven years a duly licensed real estate broker in the city of Chicago. The customary charge of real estate brokers in that city was at that time a commission of $2\frac{1}{2}$ per cent on the purchase price for procuring a purchaser for his real estate.

Appellees, Houghteling and his co-defendant, Mason, were at the time the owners of the lots at the northeast corner of Randolph and Dearborn streets, in the city of Chicago, and the building situated thereon, which enjoyed the name, " The Real Estate Board Building."

A short time prior to the transaction in controversy, Wilson had learned that the estate of Alfred Cowles, deceased, late the business manager of the Chicago Tribune, was in the market for a large investment. The executors of the estate were Alfred Cowles, the son of the deceased, and Lewis L. Coburn. Wilson had had no interviews with any one representing said estate, and did not act for or represent them as a broker, but having learned that they wished to

buy something of the size of the Real Estate Board Building, and believing that the owners might want to sell it, and that he might thereby earn a commission, between the 15th and 20th of September, 1893, went over to Houghteling's office, found him at the door of his inside office, and asked him if the building was for sale. Houghteling said yes, and took him inside, and introduced him to Mason, saying to Mason that he thought Wilson could find a customer.

He said Mason wanted $450,000, was willing to take less, but did not want to name a lower price than $450,000.

Wilson did not tell Houghteling whom he had in view as a purchaser, but the property was placed in his hands for the purpose of finding a purchaser. Wilson immediately began to negotiate with Coburn for the sale of the property to the Cowles estate. Coburn and Wilson talked it over on various occasions, Coburn desiring to get it for less than $450,000. After Cowles returned, Coburn went over to see Houghteling and offered him $375,000, and notified Wilson of the offer. Houghteling said that was too low and he would not accept it. Matters dragged along for a week, and Houghteling urged Coburn to close it up. Finally Coburn told Wilson he did not care to leave his offer open, and said that if it was closed up at all it must be right away.

Wilson went to Houghteling's office and told him of this on Friday, the 24th of October. The latter said he would at once go and see Mason, and on his way to Mason's office stopped in at Wilson's office, and asked him if he would accept $5,000 commissions in case sale was closed. Wilson told him no. After a little argument about it he left. (The regular commission on a sale of $375,000 would be $9,375.) Mr. Houghteling went to Mason's office, came back to Wilson's about 5:20, and told him Mason and he had decided to accept Coburn's offer of $375,000, and asked Wilson to see Coburn and make an appointment with him to meet Houghteling at the latter's office at 2:30 the next day. Wilson did so. They met as appointed, and on Wilson going over there at 3 p. m., Saturday, he found Houghteling writing and Coburn at his desk. Wilson wanted to

know if there was any objection to letting the newspapers publish it, the Tribune having already gotten hold of the item. Houghteling said after the sale was closed he did not see that it would make any difference; that at present he was writing out the contract. It appears the contract was signed that afternoon. The contract which Houghteling was drawing up at his office on Saturday afternoon, when Wilson found Coburn there was afterward, but on that same day, signed by the parties thereto, and is as follows :

PEABODY, HOUGHTELING & Co.

The Real Estate Board Building, N. E. Corner Dearborn and Randolph Sts.

CHICAGO, Oct. 25, 1890.

Henry B. Mason and James Houghteling, sell, and Lewis L. Coburn and Alfred Cowles, executors under the will of Alfred Cowles, deceased, buy the property situated on the northeast corner of Dearborn and Randolph Sts., known as the Real Estate Board building, the land being described as sub-lots 5, 6, 7 and 8, of original lots 5, 6 and 8 in block 36, in the original town of Chicago, being approximately 70'x60', for the sum of three hundred and seventy-five thousand dollars ($375,000).

The buyers assume to pay a mortgage of $175,000, maturing November 1, 1893, with interest at 6 per cent, and a second mortgage of $75,000, maturing at the same time, with interest at 6½ per cent, the sellers agreeing to make a rebate on the purchase price aforesaid of $1,125, to equalize the interest on said two mortgages to 6 per cent. The balance of the purchase money shall be paid as follows: $75,000 in cash, and the balance in the form of a certain mortgage note of $50,000 made by the trustees of the Newberry estate, favor of Alfred Cowles, and secured on block bounded by Clark, Oak, Lafayette and Dearborn avenue, maturing June, 1891. The sellers will furnish complete, merchantable abstract at once, and the buyers will have it examined without delay, it being the intention to close up the transfer on November 1, 1890.

The rents, insurance, interest and all other charges, are to be adjusted between the buyers and sellers, as of date of actual transfer.

JAMES L. HOUGHTELING,

HENRY B. MASON,

By JAMES L. HOUGHTELING.

LEWIS L. COBURN,

ALFRED COWLES,

Executors under the will of Alfred Cowles,

By LEWIS L. COBURN.

Coburn, learning that said title was derived through a foreclosure suit brought by the United States Mortgage Company, in the United States Circuit Court for the Northern District of Illinois, against Bryant, his children and grandchildren, to foreclose a couple of mortgages, one made by Bryant and his children, in 1872, and another by said children, in 1876, and that one of the grandchildren of said Bryant, to wit, Lelia McCampbell, the daughter of Lelia Bryant McCampbell, one of James M. Bryant's daughters, was born in February, 1885, after said foreclosure suit had been begun, and prior to a decree therein, and had never been made a party thereto or served with process, decided that said Lelia McCampbell had vested interest in said property, and was entitled to redeem from such foreclosure.

Cowles, Coburn's co-trustee, who was also a lawyer, examined the title, went over the objections with Coburn, and united with Coburn in objecting to the title, and but for that objection the executors of the estate of Alfred Cowles were ready, able and willing to buy the property in accordance with the terms of the contract.

Mason tried to argue them out of their point but was unsuccessful, the executors declining to take the title on account of the objection mentioned, that constituting their only objection to taking a deed. The owners never tendered a deed of the property to the executors, but upon Coburn's final declination to accept the title, Mason said: "I don't like to have the contract outstanding as a cloud on our title.

\* \* \* I suppose we had better cancel it." And Coburn said "yes," and their copy was produced and Mason wrote "canceled" in the margin and scrawled out the signatures.

Appellant and appellees did everything in their power to straighten the matter out, and to try and get Coburn to take the property.

Wilson, believing that he had procured a customer ready, willing and able to buy the property, with whom a written contract for purchase had been made, at figures satisfactory to the owners, considered he had earned the usual commissions whether the title was good or bad. He therefore demanded the payment of his commissions, which was refused. He thereupon brought suit for the same, and upon trial before Judge Blanke, without a jury, the latter found for the defendants. The plaintiff thereupon prayed an appeal to this court.

Hamline, Scott & Lord, attorneys for appellant.

Edwin Burritt Smith and James C. Hutchins, attorneys for appellees.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

The foregoing statement is of matters concerning which there is no dispute.

The material question of fact about which the parties do not agree is as to the terms upon which appellant was authorized to find a purchaser for the property.

Appellees testify, in substance, that the question of appellant's commissions was discussed with him before he was authorized to offer the property for sale, and that he was told that if the party he had in mind would take the property and pay appellees' equity therein in cash, they would pay two and one-half per cent commission.

Appellant testifies that he was told that he might offer the property for sale for $450,000, and if he effected a sale that he should be paid two and one-half per cent commission.

The court found for the defendants, and upon this as upon all other disputed questions of fact, its finding is presumed to have been such as goes to sustain its general finding.

In the consideration of this cause this court is confronted with the conclusion of the trial court that appellant did not fulfill the conditions under which he was to be entitled to commissions.

Granting that he brought about a binding contract of sale, the would-be purchasers declined to and did not take or pay for the property.

Appellees did all that they could to induce the executors of the Cowles estate to carry out their contract of purchase.

After all efforts of appellant and appellees to induce the executors to take the property had failed, and the contract had been surrendered, appellees brought, under the burnt record act, a bill to establish their title, under which the Supreme Court of this State have affirmed the title of appellees.

The written contract of sale was not personally signed by one of the executors, Coburn signing for each; Mr. Cowles, however, approved of what Mr. Coburn did. Upon the trial the will of Alfred Cowles was not offered in evidence, and it is insisted that it does not appear that the executors of the Cowles estate had, as such, any power to buy real estate or enter into the engagements set forth in the contract of sale.

Agreeing, as we do, in the conclusion of the trial court that appellant failed to perform the condition upon which his right to a commission depended, it is unnecessary to discuss the other questions presented by this record.

The judgment of the Superior Court is affirmed.